**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| ADM INVESTOR SERVICES, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 05 C 1823 |
| | ) | |
| MARK W. COLLINS, | ) | |
| | ) | |
| Defendant. | ) | |

<u>**MEMORANDUM OPINION**</u>

This case is before the court for ruling on Plaintiff ADM Investor Services, Inc.'s ("ADMIS") motion to dismiss defendant Mark Collins's counterclaim and to strike the affirmative defenses. For the reasons explained below, the court grants ADMIS's motion in its entirety.

<u>**BACKGROUND**</u>

ADMIS is a registered Futures Commission Merchant ("FCM") with the Chicago Board of Trade ("CBOT"). Pursuant to the terms of a Customer Agreement dated February 27, 2003, Collins entered into a brokerage relationship with ADMIS in order to trade in commodity futures contracts and related options. ADMIS has sued Collins for breach of contract to collect a debit balance on Collins's account in the amount of $85,521.83 which, according to ADMIS, stems from Collins's unprofitable speculation in the commodity futures markets. In answering the complaint, Collins also raised

counterclaims and affirmative defenses, which are the subject of the pending motion to dismiss and to strike.

In his counterclaims — which are pled as a single count, but raise several legal theories — Collins alleges that ADMIS is liable to him for (1) failure to require adequate initial margin, (2) breach of fiduciary duty to comply with all applicable CBOT rules and federal regulations, and (3) churning in violation of § 4(b) of Commodity Exchange Act, 7 U.S.C. § 6(b). ADMIS seeks dismissal of the first two counterclaims under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim, and dismissal of the churning counterclaim for failure to plead fraud with particularity as required under Rule 9(b).[1]

With respect to the affirmative defenses, Collins contends that he is not liable for the debit balance on his account under theories of waiver, estoppel, illegality of contract, failure to state a claim for which relief can be granted, breach of fiduciary duty and assumption of risk. Collins also contends that ADMIS may not be the real party in interest. Additionally, Collins asserts two affirmative defenses based on ADMIS's alleged failure to comply with CBOT rules. Specifically, Collins claims that ADMIS violated

---

[1] ADMIS also argues that Collins has failed to set forth each separate theory of recovery in separate counts, thus violating Rule 10(b) of the Federal Rules of Civil Procedure. Rule 10(b) requires claims or defenses to be set forth in separate counts "whenever separation facilitates the clear presentation of the matters set forth." Fed. R. Civ. P. 10(b). In this case, because the court is dismissing the counterclaims on other grounds, the court finds no need to address whether separate counts were required.

CBOT rules by failing to require Collins to deposit sufficient initial margin before executing the futures trades Collins ordered. This failure, according to Collins, constitutes a failure to satisfy a condition precedent. Collins further alleges that ADMIS failed to comply with CBOT rules "by allowing [his] spread position to be lifted or exited" by selling certain soybean futures contracts on August 2, 2004 but waiting until the following day to purchase certain other soybean futures contracts. (Def.'s Ans. at 3.) According to Collins's affirmative defense, the sale and purchase should have been completed simultaneously ("in a single transaction") rather than on consecutive days. In moving to strike the affirmative defenses, ADMIS argues that the affirmative defenses based on violations of CBOT initial margin requirements and breach of fiduciary duty fail for the same reasons that the related counterclaims fail, and the remaining affirmative defenses are insufficient as a matter of law.

**DISCUSSION**

**I.    LEGAL STANDARDS**

The purpose of a 12(b)(6) motion to dismiss is to test the sufficiency of the counterclaim, not to resolve the case on the merits.   5B Charles Alan Wright & Arthur R. Miller, <u>Federal Practice and Procedure</u> § 1356, at 354 (3d ed. 2004).  Dismissal is appropriate only if "'it is clear that no relief could be granted under any set of facts that could be proved consistent with the

allegations.'" <u>Ledford v. Sullivan</u>, 105 F.3d 354, 356 (7th Cir. 1997)(quoting <u>Hishon v. King & Spalding</u>, 467 U.S. 69, 73 (1984)); <u>Jones v. General Elec. Co.</u>, 87 F.3d 209, 211 (7th Cir.), <u>cert</u>. <u>denied</u>, 519 U.S. 1008 (1996). When evaluating a motion to dismiss, the court must accept as true all well-pleaded factual allegations in the counterclaim and draw all reasonable inferences in the counterplaintiff's favor. <u>Hickey v. O'Bannon</u>, 287 F.3d 656, 657 (7th Cir. 2002).

Regarding the motion to strike affirmative defenses, "the basic concept of an affirmative defense is an *admission* of the facts alleged in the complaint, coupled with the assertion of some other reason defendant is not liable." <u>Instituto Nacional de Comercializacion Agricola v. Cont'l Ill. Nat'l Bank & Trust Co.</u>, 576 F. Supp. 985, 988 (N.D. Ill. 1983) (emphasis in original). "Affirmative defenses are pleadings and, therefore, are subject to all pleading requirements of the Federal Rules of Civil Procedure." <u>Heller Fin., Inc. v. Midwhey Powder Co., Inc.</u>, 883 F.2d 1286, 1294 (7th Cir. 1989). Specifically, affirmative defenses must satisfy the pleading requirements set forth in Rules 8 and 9. <u>Renalds v. S.R.G. Restaurant Group, Chicago, LLC</u>, 119 F. Supp. 2d 800, 802 (N.D. Ill. 2000). Although motions to strike are not favored, they are appropriate where "unnecessary clutter" can be eliminated from the case. <u>Heller</u>, 883 F.2d at 1294. An affirmative defense that is insufficient on the face of the pleadings or that consists of

nothing more than bare legal conclusions should be stricken.  _Id_. at 1394-1295; <u>Sayad v. Dura Pharm., Inc.</u>, 200 F.R.D. 419, 421 (N.D. Ill. 2001); <u>Stafford v. Connecticut Gen. Life Ins. Co.</u>, No. 95 C 7152, 1996 WL 197677, at *2 (N.D. Ill. Apr. 22, 1996).  On the other hand, affirmative defenses should not be stricken "if they are sufficient as a matter of law or if they present questions of law or fact." <u>Heller</u>, 883 F.2d at 1294.

With these legal standards in mind, the court turns to the pending motion to dismiss and to strike.  In section II, the court addresses the legal sufficiency of the counterclaims as well as the affirmative defenses based on ADMIS's alleged failure to require adequate initial margin and breach of fiduciary duty.  The legal sufficiency of Collins's other affirmative defenses is addressed in Section III.

## II.  MOTION TO DISMISS THE COUNTERCLAIMS & MOTION TO STRIKE RELATED AFFIRMATIVE DEFENSES

As explained further below, the court dismisses the counterclaims[2] alleging failure to require sufficient initial margin, breach of fiduciary duty and churning, and strikes the related affirmative defenses.[3]

---

[2]Although Collins raised three legal theories in one count, for ease of discussion, the court will refer to each legal theory as a separate counterclaim.

[3]In an effort to address any legal theory possibly advanced by Collins, ADMIS also argues that although Collins may have attempted to allege a breach of contract counterclaim, he has not adequately alleged that ADMIS breached the Customer Agreement.  This argument stems from paragraph 10 of the counterclaim, which states that "[ADMIS] retained a non-delegable duty to ensure that each transaction made by defendant provided an adequate initial margin of the

## A.    Failure to Require Sufficient Initial Margin

In Collins's first counterclaim, he alleges that ADMIS is liable to him for losses incurred on his futures trading account because ADMIS executed numerous futures purchases and sales without requiring adequate initial margin from Collins for those transactions.    At its core, this counterclaim seeks to impose liability based on ADMIS's failure to enforce exchange margin rules — namely, the initial margin requirements set by the CBOT.    In a related affirmative defense, Collins contends that he is not liable to ADMIS for the debit balance on his futures account because ADMIS failed to require sufficient initial margin.    ADMIS moves for dismissal of the counterclaim, contending that Collins fails to state a claim upon which relief can be granted.    Similarly, ADMIS urges the court to strike the related affirmative defense.    A review of the relevant caselaw demonstrates that because margin requirements exist to protect the broker and the exchange, not the customer, (1) a broker's violations of margin rules are not actionable absent fraudulent conduct or bad faith, and (2) a customer cannot avoid liability for a debit balance on the ground that his broker violated an exchange margin rule. Accordingly, for the reasons that follow, the court grants the motion to dismiss as

---

defendant's account."  (Def.'s Countercl. ¶ 10.)  The court reads paragraph 10 to be part of the underlying facts of the counterclaim.  Accordingly, we decline to construe paragraph 10 as setting forth a separate counterclaim based on breach of the Customer Agreement and will not address the issue further.

it relates to Collins's counterclaim premised on ADMIS's purported failure to enforce the CBOT's initial margin requirements and strikes the related affirmative defense.

It is well established that a sophisticated commodities futures investor cannot avoid liability for a debit balance on the ground that his broker failed to enforce exchange margin requirements. Nearly thirty years ago, in <u>Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Brooks</u>, 548 F.2d 615, 615-616 (5th Cir. 1977), the Fifth Circuit explained that accepting such a defense "would permit commodity futures investors knowingly to accept extensions of credit from a broker which violate [the exchange's] rules or regulations and repudiate losses that ensue or accept profits that follow. The only risk to the investor would be his initial deposit in the margin account, 'initial margin,' which represents only a fraction of the potential losses or hoped for profits."

Following the reasoning in <u>Brooks</u>, later decisions have rejected as a matter of law defenses and counterclaims premised on a broker's failure to enforce exchange margin rules. For example, in <u>Friedman v. Dean Witter & Co., Inc.</u>, 1981 CFTC Lexis 83 at *1,[1980-82 Transfer Binder] Comm. Fut. L. Rep. (CCH) P21,307 (CFTC Nov. 13, 1981), the plaintiff alleged that her broker violated Section 4(b) of the Commodity Exchange Act and various exchange rules "by continuing to execute trades for her account after it had

become undermargined." Plaintiff requested damages as well as an order declaring that she did not owe the debit balance on her account. <u>Id.</u> Defendant filed a counterclaim for the debit balance on plaintiff's account. <u>Id.</u> at *2. After a hearing on the merits, the ALJ dismissed plaintiff's complaint and awarded defendant the full debit balance on plaintiff's account. <u>Id.</u> In affirming the ALJ's decision on appeal, the Commodity Futures Trading Commission ("CFTC") explained that the purpose of margin requirements is not to protect the individual who is buying or selling the futures contract. <u>Id.</u> at *4-6. Rather, the purpose of margin requirements is to protect the brokerage houses and exchanges. As the CFTC held:

> Margin in a futures contract operates the same as earnest money in any other contractual situation, that is, to guarantee contract performance. Margin is a security deposit to insure that future commissions merchants have adequate customer funds to settle open positions and is required by brokerage houses and exchanges to assure their own financial integrity and the financial integrity of the entire market place.

<u>Id.</u> at *4. The CFTC thus concluded that the plaintiff had not only failed to state a cognizable cause of action against the brokerage house, but also failed to establish a defense against the broker's claim for the debit balance. <u>Id.</u> at *7-8.

Similarly, in <u>Weinberg Bros. v. Engel</u>, No. 82 C 0876, 1983 U.S. Dist. Lexis 13772, at *1 (N.D. Ill. Sept. 14, 1983), a commodities brokerage firm sued two customers to recover the debit balance on their commodity futures trading account. Defendants

filed multiple counterclaims, including a counterclaim that plaintiff had violated the exchange's rules "by permitting defendants to trade commodities when their accounts were undermargined." Id. at *2. Rejecting that counterclaim, the court explained that "margin deposits are designed to protect the exchanges and futures commission merchants, not the purchasers or sellers of the futures contracts[,]" and further stated that "the decision to permit a customer to execute commodity trades on an undermargined account could be based on any number of valid business considerations." Id. at *3-4. Accordingly, the district court held that violations of margin rules are not actionable absent allegations of fraudulent conduct and granted plaintiff's motion to dismiss the counterclaim. Id. at *3.

In opposing the motion to dismiss, Collins attempts to distinguish the cases cited by ADMIS, but his arguments are unpersuasive. According to Collins, the cases cited by ADMIS are distinguishable because they involved customers whose accounts were below the required maintenance margin, whereas in the instant case, Collins did not have adequate initial margin in his account. We recognize that there is a difference between the two types of margin requirements. Initial margin is "[t]he amount a futures market participant must deposit into his margin account at the time he places an order to buy or sell a futures contract" whereas maintenance margin is "[a] set minimum margin (per outstanding

futures contract) that a customer must maintain in his margin account." CBOT glossary, available at http://www.cbot.com/cbot/pub/page/0,3181,1059,00.html.[4] However, as relevant to the instant motion, this is a distinction without difference because the underlying purpose of both types of margin requirements is the same: to protect the exchange and the FCMs, not the customer. <u>See, e.g.</u>, <u>Merrill Lynch</u>, 548 F.2d at 615-16; <u>Weinberg Bros.</u>, 1983 U.S. Dist. Lexis 13772 at *4; <u>Friedman</u>, 1981 CFTC Lexis 83 at *4-6.[5] Margin requirements are set by the relevant exchange, which in this case is the CBOT. And although there is a difference between initial margin and maintenance margin, the exchange determines both the minimum initial and maintenance margins for futures transactions in order to control financial risks to the exchange and the brokers. CBOT Rule 431.03 (exchange sets minimum initial and maintenance margins); <u>Friedman</u>, 1981 CFTC Lexis 83 at *4 (purpose of margins is to control financial risks to brokerage houses and exchanges). Allowing Collins to avoid liability for the debit balance or to impose liability against ADMIS for his losses because ADMIS did not adhere

---

[4]The CFTC's definitions are comparable to the CBOT's definitions. According to the CFTC, initial margin "is the amount of margin required by the broker when a futures position is opened" whereas maintenance margin "is an amount that must be maintained on deposit at all times." CFTC glossary, *available at* http://www.cftc.gov/opa/glossary/opaglossary_a.htm.

[5]In ruling that margin requirements protect the exchange and the FCMs, the courts were addressing margin requirements generally — they made no distinction between initial margin and maintenance margin.

to margin rules would contravene the very purpose of margin requirements.

Moreover, despite Collins's argument to the contrary, at least two of the cases cited by defendants did involve initial margin requirements. In _Friedman_, the heart of plaintiff's complaint was that the FCM continued to execute trades for her futures account after it had become undermargined. 1981 CFTC Lexis 83 at *1. Likewise, in _Weinberg_, defendants filed a counterclaim because their brokers allowed them to trade commodities when their accounts were undermargined. 1983 U.S. Dist. Lexis 13772 at *2. Stated another way, the customers in both _Friedman_ and _Weinberg_ alleged that their brokers executed the trades they placed without requiring them to satisfy the minimum initial margin requirements for those trades. The court recognizes that the term "initial margin" is not used in either the _Friedman_ or the _Weinberg_ decisions. But in both cases, the customers complained that the brokers allowed them to continue trading when their accounts were undermargined. By definition, initial margin is the amount a futures market participant must have on deposit in his margin account at the time he places an order to buy or sell a futures contract. The necessary implication, therefore, is that the brokers in _Friedman_ and _Weinberg_ allowed their customers to continue to trade without requiring them to satisfy the minimum initial margin requirements. Because both _Friedman_ and _Weinberg_

involved initial margin requirements, Collins's efforts to distinguish those cases fail.

In fact, Collins's counterclaim is analogous to the counterclaims that were found insufficient as a matter of law in _Friedman_ and _Weinberg_. Collins seeks to impose liability based on ADMIS's purported failure to follow the CBOT's initial margin rules. However, as the _Weinberg_ court held, a claim premised on a broker's failure to enforce margin rules is actionable only if there is evidence of fraudulent conduct. 1983 U.S. Dist. Lexis 13772 at *4-5. Collins does not allege that ADMIS's failure to require adequate initial margin was in any way fraudulent. Accordingly, following the reasoning of _Friedman_ and _Weinberg_, the court grants the motion to dismiss as it relates to Collins's counterclaim based on ADMIS's violations of margin rules. _Weinberg_, 1983 U.S. Dist. Lexis 13772 at *1 (granting motion to dismiss counterclaim based on broker's failure to require adequate margin); _Friedman_, 1981 CFTC Lexis 83 at *7 (affirming dismissal of customer's complaint based on broker's failure to require adequate margin); _see also_, _Stotler & Co. v. Dierschke_, No. 88 C 7135, 1993 WL 128141, at *1-3 (N.D. Ill. Apr. 23, 1993) (in granting summary judgment in favor of plaintiff, court followed _Friedman_ and _Brooks_ and ruled that absent fraud or bad faith on part of brokerage house, customer should not be excused from paying off his account because the broker violated an exchange margin rule). The court

likewise strikes Collins's affirmative defense based on ADMIS's purported failure to require sufficient initial margin. See, e.g., Merrill Lynch, 548 F.2d at 615-616 (commodity futures investor cannot avoid liability for debit balance based on broker's failure to enforce margin requirements).

**B.  Breach of Fiduciary Duty**

Collins also brings a counterclaim in which he alleges that ADMIS "breached its fiduciary duty to comply with all applicable CBOT rules and federal regulations."  (Def.'s Countercl. ¶ 38.) ADMIS seeks dismissal of the counterclaim, arguing that as a matter of law, ADMIS owed Collins no fiduciary duty.  Similarly, ADMIS asks the court to strike Collins's affirmative defense that ADMIS breached its fiduciary duty.  For the following reasons, the court agrees with ADMIS and therefore dismisses the breach of fiduciary duty counterclaim and strikes the related affirmative defense.

ADMIS's position that it owed no fiduciary duty to Collins is based on clearly established Seventh Circuit law, which holds that "[o]nly a broker operating a discretionary account — in which the broker determines which investments to make — is a fiduciary." CFTC v. Heritage Capital Advisory Servs., Ltd., 823 F.2d 171, 173 (7th Cir. 1987); Stotler, 1993 WL 128141 at *3 (ruling that broker on nondiscretionary account did not owe fiduciary duty to customer); In re Oberweis Sec., Inc., No. 89 B 11283, 1992 WL 119272, at *10 (Bankr. N.D. Ill. May 21, 1992) (broker maintaining

a nondiscretionary account is obligated to "comply with his contractual obligations but he does not act as a fiduciary or owe any fiduciary duty to the customer").

In opposing the motion to dismiss, Collins does not argue that his account with ADMIS was a discretionary account.[6]  Rather, Collins suggests that a fiduciary duty "arises from [ADMIS's] position as an FCM to comply with all CBOT Rules including 'initial margin requirements.'" (Def.'s Response at 3.)  From that premise, Collins argues that ADMIS should have refused to accept and execute his orders unless he deposited sufficient initial margin, or should have restricted his trades to the amount that was on deposit in his margin account.  But Collins fails to cite a single case that supports his theory.

The only case Collins relies upon is Anspacher & Associates, Inc. v. Henderson, 854 F.2d 941 (7th Cir. 1988).  Even though the broker on a nondiscretionary account is not a fiduciary, Heritage Capital, 823 F.2d at 173, in Anspacher, the Seventh Circuit explained that a broker nevertheless owes a fiduciary duty to its customer to execute the customer's orders faithfully.  Anspacher, 854 F.2d at 945.  The ruling in Anspacher is neither particularly remarkable nor relevant to the case at bar, however.  For one thing, the fiduciary duty of care discussed in Anspacher is a

_____

[6]Nor could he reasonably make such an argument.  As explained further below in Section II.C, the clear inference from the complaint and the counterclaim is that Collins, not ADMIS, determined which investments he would make.

limited one — it is a duty the broker owes as the customer's agent, "limited to actions occurring within the scope of the agency." Refco, Inc. v. Troika Investment Ltd., 702 F. Supp. 684, 686 (N.D. Ill. 1988). Consequently, any duty a broker owes to a customer who holds a nondiscretionary account "is an exceedingly narrow one, consisting at most of a duty to properly carry out transactions ordered by the customer." Index Futures Group, Inc. v. Ross, 557 N.E. 2d 344, 348 (Ill. App. Ct. 1990) (citing Anspacher, 854 F.2d 941).

Additionally, Anspacher is factually distinguishable from the case at bar. Anspacher involved allegations that the broker failed to liquidate the customer's positions upon the customer's request and failed to follow the customer's instructions to close out the account, 854 F.2d at 945, whereas the instant case involves a broker who executed the orders that Collins placed. The decision in Anspacher in no way suggests that brokers owe their customers a fiduciary duty to enforce initial margin requirements set by an exchange.[7]

The court concludes that Collins's counterclaim and affirmative defense based on breach of fiduciary duty fail as a

---

[7]Indeed, Collins's argument that ADMIS owed him a fiduciary duty to enforce margin rules ignores the fact that those rules exist to protect the broker, not the customer. See, e.g., Weinberg, 1983 U.S. Dist. Lexis 13772 at *4. In the absence of any legal authority supporting such a duty, Collins's novel theory is unpersuasive.

matter of law.[8]  Accordingly, the court dismisses the counterclaim
and strikes the affirmative defense.

###    C.    **Churning**

To the extent Collins counterclaims that ADMIS churned his
account in violation of Section 4(b) of the Commodity Exchange Act,
7 U.S.C. § 6(b), ADMIS seeks dismissal on grounds that Collins has
failed to plead fraud with particularity in accordance with Rule
9(b) of the Federal Rules of Civil Procedure.  For the reasons that
follow, the court agrees.

"Churning is the excessive trading of an account by a broker
to generate additional commissions."  Dyer v. Merrill Lynch,
Pierce, Fenner & Smith, Inc., 928 F.2d 238, 241 (7th Cir. 1991).
Actionable churning claims must be pled with particularity in
compliance with Rule 9(b) of the Federal Rules of Civil Procedure.
Proetz v. Dean Witter Reynolds, Inc., No. 87 C 4777, 1988 WL 17885,
at *5 (N.D. Ill. Feb. 22, 1988 (Grady, J.); Shelley v. Noffsinger,
511 F. Supp. 687, 692 (N.D. Ill. 1981).  Collins asserts that he
has complied with Rule 9(b) by identifying each allegedly improper
trade by date, size and type of trade, amount, as well as the loss
plaintiff incurred and the commission plaintiff received.  But that

---

[8]There is an additional reason to strike the breach-of-fiduciary-duty
affirmative defense: Collins pled only that ADMIS breached a fiduciary duty,
which is nothing more than a bare legal conclusion.  See Sayad, 200 F.R.D. at
421; Stafford, 1996 WL 197677 at *2.  Under other circumstances, the court would
give Collins leave to amend to correct the pleading deficiency; here, however,
because the breach-of-fiduciary-duty affirmative defense fails as a matter of
law, amendment would be futile.

does not begin to allege a churning-based fraud claim.

For one thing, to state a claim for churning, a plaintiff must allege that the broker had control over the account.  See Dyer, 928 F. 2d at 241 (churning claim requires showing that broker had control of the account).  Here, there are no allegations in the counterclaim suggesting that ADMIS had control of Collins's account or that ADMIS conducted any trades without his consent.  Id. (granting summary judgment where trades were made with customer's approval and at his direction).  Rather, as Collins's counterclaim acknowledges, he placed each of the challenged orders with ADMIS — he faults ADMIS only for accepting and placing his orders without requiring an adequate initial margin.  The clear inference is that each of the challenged orders were made with Collins's approval and at his direction.  In other words, Collins, not ADMIS, controlled the trades in his account.  Absent allegations that ADMIS controlled his account, Collins's churning counterclaim necessarily fails.[9]

There are other flaws in the churning counterclaim as well. In addition to alleging the nature, amounts and dates of the challenged transactions, a customer raising a churning claim must also allege "that the broker or his agent engaged in excessive

_____

[9]Depending on the circumstances, a customer may be able to demonstrate that the broker had control over the account based on the customer's naivete or inexperience.  See, e.g., Shelley, 511 F. Supp. at 691 n. 3.  Collins, however, does not allege that he was an inexperienced customer.  Indeed, ADMIS repeatedly characterizes Collins as a sophisticated investor — a characterization which Collins has not disputed.

trading in the light of the character of the account . . . [and]
that the broker acted with fraudulent intent or willful and
reckless disregard for the interest of his client." Proetz, 1988
WL 17885 at *5. But here, Collins does not allege that ADMIS acted
with fraudulent intent or willful and reckless disregard for his
interests.[10] Nor does it seem likely that Collins could make such
allegations in a case like this in which the broker merely
implemented the customer's orders. Absent fraud allegations,
Collins fails to state a claim for churning.

Additionally, because "the essence of a churning claim is not
a particular trade or group of trades, but rather is the overall
amount of trading in the customer's account in light of such
considerations as market conditions, size of commissions and
sophistication of the customer," Shelley, 511 F. Supp. at 691-692,
in order to comply with Rule 9(b), a customer alleging a churning
claim must allege sufficient facts "to allow for a determination of
the turnover ratio in the account, and/or the percentage of the
account value paid in commissions." Id. at 692 (granting motion to
dismiss churning claim). Because Collins did not include such
allegations in his counterclaim, even if he had alleged that ADMIS
controlled his account and acted with fraudulent intent (which he
did not), his counterclaim nevertheless would fail to satisfy Rule

---

[10]Collins's allegation that ADMIS "wrongfully, intentionally and wilfully
circumvented" margin requirements, (Def.'s Countercl. ¶ 37), is not sufficient
to allege fraudulent intent in dealing with his account.

9(b).

Accordingly, Collins's churning counterclaim is dismissed. Sometimes, a party who fails to satisfy the requirements of Rule 9(b) will be given an opportunity to file an amended complaint. In this case, however, it is highly unlikely that Collins could allege that ADMIS controlled his futures account, let alone that ADMIS acted with fraudulent intent. Providing an opportunity to re-plead thus seems futile. In the event Collins disagrees and believes he can, consistent with Rule 11 of the Federal Rules of Civil Procedure, file an amended churning claim that will withstand a motion to dismiss, he may seek leave to do so within 14 days of the date of this order.

### III. Motion to Strike Affirmative Defenses

The court has already stricken the affirmative defenses that allege failure to require adequate initial margin and breach of fiduciary duty. ADMIS also moves to strike all but two of the remaining affirmative defenses asserted by Collins.[11] For the reasons that follow, the court strikes all of the affirmative defenses.

Regarding Collins's assertion of waiver, estoppel, illegality of contract and assumption of risk, the court strikes each of those affirmative defenses because Collins pled only bare legal

---

[11]The two affirmative defenses that ADMIS did not move to strike assert that ADMIS (1) fails to state a claim for which relief can be granted, and (2) may not be the real party in interest.

conclusions.  Rule 8(a) of the Federal Rules of Civil Procedure requires a "short and plain statement" of the defense.  Fed. R. Civ. P. 8(a).  Simply pleading legal conclusions like "waiver" and "estoppel" is not enough because even under the liberal federal pleading standards, bare bones conclusory allegations with no supporting facts are not sufficient.  <u>Stafford</u>, 1996 WL 197677 at * 2 (dismissing affirmative defenses, including waiver, estoppel, failure to state a claim and statute of limitations, where defendant asserted legal conclusions with no factual support); <u>see also</u> <u>Sayad</u>, 200 F.R.D. at 421 (bare legal conclusions are insufficient because Rule 8(a) requires short and plain statement of material elements of defense).  For the same reason, the court also strikes Collins's affirmative defenses that ADMIS fails to state a claim for which relief can be granted and may not be the real party in interest.  Even though ADMIS did not challenge those two affirmative defenses, they are patently defective because Collins again asserts only bare legal conclusions with no factual support.  <u>Stafford</u>, 1996 WL 197677 at * 2.  More detail is necessary to satisfy Rule 8(a) and give ADMIS adequate notice of the defenses.  The defenses will be stricken, and Collins is given fourteen days from the date of this order to file an amended pleading to cure the pleading deficiencies in these affirmative

defenses, if he chooses to do so.[12]

In Collins's final affirmative defense, he asserts that ADMIS failed to comply with CBOT rules "by allowing [his] spread position to be lifted or exited" by selling certain soybean futures contracts on August 2, 2004 but waiting until the following day to purchase certain other soybean futures contracts. (Def.'s Ans. at 3.) According to Collins's affirmative defense, the sale and purchase should have been completed simultaneously ("in a single transaction") rather than on consecutive days. ADMIS asks the court to strike this affirmative defense on grounds that Collins has failed to explain why the trades he ordered should bar ADMIS's recovery of the debit balance, particularly when Collins has

---

[12]Regarding the illegality of contract defense, however, the court cautions Collins to consider carefully whether the defense is applicable before asserting it again. The parties briefed the merits of the defense based on ADMIS's best guess regarding what Collins's theory might be. Because the defense was not adequately pled, the court declines to address those arguments at this time, except to note that most of the cases cited by Collins are not on point, and to reject Collins's contention that MacDonald v. Sturdy, No. 88 C 7590, 1989 WL 18387, at *2 (N.D. Ill. 1989) is analogous to the case at bar.

In MacDonald, the plaintiff was an independent market maker on the Chicago Board of Options Exchange ("CBOE"), and thus was subject to the CBOE's rules and regulations. Id. at *1. Plaintiff entered into contracts with defendants that allowed defendants to execute trades directly on plaintiff's personal account. Id. After defendants incurred large trading losses on plaintiff's account and plaintiff had to cover the losses, plaintiff sued defendants to recover the losses and expenses associated with defendants' trades. Id. The defendants moved to dismiss the complaint on grounds that the contract at issue was illegal and void as a matter of public policy. The court agreed, ruling that under applicable CBOE rules, market makers are prohibited from entering into unauthorized trading arrangements with nonmembers, including participating in a joint account with nonmembers. Id. at *2.

In short, MacDonald involved parties who expressly contracted around a CBOE rule. Not surprisingly, the court declined to enforce the contract. In the instant case, on the other hand, the contract between ADMIS and Collins does not include any provisions that contravene the CBOT's margin rules. For example, there is no provision under which ADMIS agrees not to require Collins to meet the CBOT's margin requirements. MacDonald is neither analogous nor instructive in this case.

asserted nothing more than an alleged violation of some unspecified CBOT rules.  The court agrees that alleging an unspecified CBOT rule violation does not give ADMIS adequate notice of the nature of the defense. Furthermore, Collins has offered no argument resisting the motion to strike this affirmative defense.

## IV.  CONCLUSION

For the reasons discussed above, plaintiff's motion to dismiss the counterclaims and strike the affirmative defenses is granted. Specifically, the court dismisses the counterclaims alleging failure to require sufficient initial margin and breach of fiduciary duty for failure to state a claim.  Additionally, the court dismisses the churning counterclaim for failure to satisfy the pleading requirements of Rule 9(b) of the Federal Rules of Civil Procedure.  Because it is unlikely that Collins could allege that ADMIS controlled his account or acted with fraudulent intent, providing an opportunity to re-plead the churning counterclaim seems futile.  However, in the event Collins disagrees and believes he can file a counterclaim that will withstand a motion to dismiss, he may seek leave of court within fourteen days of this order to amend the churning counterclaim.

The court strikes Collins's affirmative defenses alleging failure to require sufficient initial margin and breach of fiduciary duty for failure to state a claim.  The affirmative defense based on liquidation of Collins's spread position is also

stricken. All of the other affirmative defenses are stricken because Collins pled only bare legal conclusions and thus failed to comply with the pleading requirements of Rule 8(a) of the Federal Rules of Civil Procedure. For the affirmative defenses that failed to comply with Rule 8(a), Collins has fourteen days from the date of this order to file an amended pleading to cure the pleading deficiencies, if he believes he can do so consistently with Rule 11.

DATE:      January 26, 2006

ENTER:     _____
           John F. Grady, United States District Judge