## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

ADM INVESTOR SERVICES, INC.,      )
                                  )
            Plaintiff,            )
                                  )
        v.                        )        No. 05 C 1823
                                  )
MARK W. COLLINS,                  )
                                  )
            Defendant.            )


### MEMORANDUM OPINION

Before the court is plaintiff's motion for partial summary judgment pursuant to Federal Rule of Civil Procedure 56. For the reasons stated below, plaintiff's motion is granted.

### BACKGROUND

The following relevant facts are drawn from plaintiff's statement of material facts and defendant's response, with any differences between them resolved in defendant's favor. Pursuant to Local Rule 56.1(b)(3)(c), all material facts set forth in the plaintiff's statement are deemed to be admitted unless controverted by the statement of the defendant.

Plaintiff ADM Investor Services, Inc. ("ADMIS") is a registered Futures Commission Merchant ("FCM") with the Chicago Board of Trade ("CBOT"). On February 23, 2003, defendant Mark W. Collins ("Collins") became a customer of ADMIS when he entered into a written Customer Agreement with it. Collins's account was non-

discretionary, meaning that no person other than Collins had authority to buy or sell futures or options in his account, except as provided with regard to liquidation of undermargined positions. From the time Collins opened his account until it was closed in August, 2004, he had earned $979,653.17 in net trading profits, excluding the disputed debit balance. Collins was an experienced commodities speculator, and he held written powers of attorney to trade the accounts of at least five other ADMIS customers on a discretionary basis.

On July 27, 2004, at the direction of Collins, ADMIS caused certain orders to be executed on the floor of the CBOT, buying for his account forty contracts of soybeans for delivery in August of 2004, while simultaneously selling forty contracts of soybeans for delivery in November of 2004.[1] When a customer has both bought and sold the same commodity futures contract but for different delivery months, the positions are referred to as a "spread." The underlying speculative intent of such a strategy is to reap a profit as the future price differential between the two delivery months either widens or narrows. Here, the August soybeans were purchased at a price of $6.69 per bushel, and the November soybeans were sold at a price of $5.89 per bushel. These two related futures positions are hereinafter referred to as "the soybean spread."

---

[1]Pursuant to CBOT contract specifications, each soybean futures contract represents 5,000 bushels of underlying physical commodity.

At the time Collins established the soybean spread, his account was the subject of a maintenance margin call that had been issued two days earlier in the amount of $27,175. The parties dispute whether ADMIS violated CBOT margin rules by allowing Collins to establish the soybean spread at a time when his account was the subject of a maintenance margin call. The parties do not dispute that on multiple prior occasions Collins had established new positions in his futures account while his account was already the subject of existing maintenance margin calls. Some of those trades resulted in losses, while others resulted in profits to Collins. Over the life of his account, Collins realized approximately $569,100 in trading profits which arose from establishing futures or options positions while his account was already subject to a margin call.

As of the close of trading on July 30, Collins had an unrealized profit of $40,000 on his short November soybean position as a result of the market price for those soybeans falling from $5.89 per bushel to $5.69 per bushel. However, the market price of Collins's August soybeans had dropped from $6.69 per bushel to $5.995 per bushel, creating an unrealized loss of $139,000. At the close of trading on July 30, therefore, Collins had a net unrealized loss of $99,000. Because the soybean spread had deteriorated to this extent, ADMIS issued a margin call demanding the deposit of additional funds to Collins's account. That day

Collins deposited $15,000 into his account.

On August 2, Collins offset (repurchased) his short November soybeans at a price of $5.70 per bushel. The next day he sold (covered) his long August soybean position at a price of $6.00 per bushel. This resulted in a deficit balance due and owing to ADMIS in the amount of $85,521.83.

When the August soybean position was covered, the price differential was 30 cents. The parties dispute whether CBOT rules require a spread position to be liquidated simultaneously, or if it could be liquidated consecutively instead. However, it is not disputed that had the spread position been liquidated simultaneously on August 2, it would have been at either the same 30 cent price differential or at a differential of 29 cents, which would have increased Collins's debit balance by $2,000.[2]

Prior to the commencement of trading on each CBOT business day, each CBOT clearing member firm (including ADMIS) must rebalance its clearing account with CBOT's clearing corporation. The rebalance is based upon the settlement prices of all CBOT products, as of the close of trading on the preceding day, aggregated for all ADMIS customers. ADMIS was required and did pay to its clearing corporation an amount equal to Collins's deficit balance prior to the commencement of business on August 4, 2004.

_____

[2]Collins contends that ADMIS's assertions are "disputed to the extent that this statement is speculative," but offers no citation to the evidence supporting his claim. Pursuant to Local Rule 56.1, ADMIS's assertions are therefore deemed admitted.

To date, Collins has made no payment of funds to reduce or satisfy his debit balance.  Aside from the disputed margin requirements, Collins does not dispute that ADMIS fulfilled all of its duties under their agreement.

ADMIS fills retail customer orders through a network of branch offices and introducing brokers ("IBs"), one of which is Shell Rock Enterprises, Inc.  Pursuant to an agreement between Shell Rock and ADMIS, Shell Rock has, through the deduction by ADMIS of commission revenue which would otherwise be payable by it to Shell Rock, paid to ADMIS the amount of $75,000.  Pursuant to its agreements, ADMIS works with its IBs in attempting to collect customer debit balances.  When an IB wishes to pursue collection of the debit balance of an introduced account on its own, once the IB has paid ADMIS an amount equal to the customer debit balance ADMIS executes a written assignment of its rights and claims.  At least as frequently, the IB does not request an assignment, but rather opts that ADMIS pursue collection.  Shell Rock has never requested nor has ADMIS ever provided it with an assignment of ADMIS's claims and rights under its agreement with Collins.

ADMIS filed a single count complaint against Collins for breach of contract, seeking $85,521.83 plus interest.  Collins filed an answer asserting several counterclaims and affirmative defenses.  In his counterclaims Collins alleged that ADMIS was liable to him for (1) failure to require adequate initial margin,

(2) breach of fiduciary duty to comply with all applicable CBOT rules and federal regulations, and (3) churning in violation of § 4(b) of Commodity Exchange Act, 7 U.S.C. § 6(b). With respect to the affirmative defenses, Collins contended that he was not liable for the debit balance on his account under theories of waiver, estoppel, illegality of contract, failure to state a claim for which relief can be granted, breach of fiduciary duty and assumption of risk. Collins also contended that ADMIS might not be the real party in interest in light of the Shell Rock payment. Additionally, Collins asserted two affirmative defenses based on ADMIS's alleged failure to comply with CBOT rules. Specifically, Collins claimed that ADMIS violated CBOT rules by failing to require Collins to deposit sufficient initial margin before executing the futures trades Collins ordered. This failure, according to Collins, constituted a failure to satisfy a condition precedent. Collins further alleged that ADMIS failed to comply with CBOT rules "by allowing [his] spread position to be lifted or exited" by selling certain soybean futures contracts on August 2, 2004 but waiting until the following day to purchase certain other soybean futures contracts. (Def.'s Ans. at 3) According to Collins's affirmative defense, the sale and purchase should have been completed simultaneously ("in a single transaction") rather than on consecutive days.

In a memorandum opinion we dismissed all of Collins's

counterclaims and affirmative defenses.  <u>ADM Investor Servs., Inc.
v. Collins</u>, No. 05 C 1823, 2006 WL 224095 (N.D. Ill. Jan. 26, 2006)
("<u>Collins I</u>").  ADMIS now moves for partial summary judgment on the
issue of Collins's liability to pay his debit balance.


## **DISCUSSION**

Summary judgment "shall be rendered forthwith if the
pleadings, depositions, answers to interrogatories, and admissions
on file, together with the affidavits, if any, show that there is
no genuine issue as to any material fact and that the moving party
is entitled to a judgment as a matter of law." Fed. R. Civ. P.
56(c).  In considering such a motion, the court construes the
evidence and all inferences that reasonably can be drawn therefrom
in the light most favorable to the nonmoving party. <u>See Pitasi v.
Gartner Group, Inc.</u>, 184 F.3d 709, 714 (7th Cir. 1999).  "Summary
judgment should be denied if the dispute is 'genuine': 'if the
evidence is such that a reasonable jury could return a verdict for
the nonmoving party.'" <u>Talanda v. KFC Nat'l Mgmt. Co.</u>, 140 F.3d
1090, 1095 (7th Cir. 1998) (quoting <u>Anderson v. Liberty Lobby,
Inc.</u>, 477 U.S. 242, 248 (1986)).  The court will enter summary
judgment against a party that does not "come forward with evidence
that would reasonably permit the finder of fact to find in [its]
favor on a material question." <u>McGrath v. Gillis</u>, 44 F.3d 567, 569
(7th Cir. 1995).

Once the moving party has supported its motion for summary judgment, the "adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in [Rule 56], must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). Any fact asserted in the movant's affidavit will be accepted by the court as true unless the adverse party submits its own affidavits or other evidence contradicting the assertion. Curtis v. Bembenek, 48 F.3d 281, 287 (7th Cir. 1995). If the adverse party does not respond with evidence complying with Rule 56, "summary judgment, if appropriate, shall be entered against the adverse party." Fed. R. Civ. P. 56(e).

In support of its motion for partial summary judgment ADMIS points to our opinion in Collins I granting its motion to dismiss Collins's counterclaims and strike his affirmative defenses. In that opinion we dismissed Collins's counterclaims alleging failure to require sufficient margin, breach of fiduciary duty and churning, and struck his related affirmative defenses. Collins does not dispute that his account currently shows a deficit balance due and owing to ADMIS in the amount of $85,521.83.

Collins offers two arguments in response to ADMIS's motion. First, he challenges his contract with ADMIS, claiming that it is illegal and therefore unenforceable. In the alternative, he argues that his contract with ADMIS is void as against public policy.

Second, he contends that ADMIS is not the real party in interest. These arguments will be addressed in turn.

## A.    Illegality of Contract Between ADMIS and Collins

Collins first contends that ADMIS's performance under its contract with him was illegal, and as a result the contract is unenforceable. In particular he argues that "pursuant to CBOT Rule 431,[3] and under the express authority of 7 U.S.C. § 7,[4] the plaintiff is mandated to ensure a proper margin is received prior to consummating any transaction." Collins claims that because ADMIS allowed him to trade without the required initial margin, ADMIS's performance of the contract was illegal. He also argues that because the contract was illegal it was against public policy.

"The law of Illinois provides a defense to the enforcement of a contract if that contract is illegal either as a matter of

---

[3]CBOT Rule 431.02(11) provides as follows:

Members shall not accept orders for new trades from a customer, unless the minimum initial margin on the new trades is deposited and unless the margin on old commitments in the account equals or exceeds the initial requirements on hedging and spreading trades and/or the maintenance requirements specified in Regulations 431.03 and 431.05 on all other trades. If the customer has a credit in excess of the initial margin requirements on all old commitments in his account, this may be used as part or all of the initial margins required on new commitments. However, credits in excess of maintenance margins and less than initial margin requirements may not be used.

[4]7 U.S.C. § 7(d)(11) provides as follows:

The board of trade shall establish and enforce rules providing for the financial integrity of any contracts traded on the contract market (including the clearance and settlement of the transactions with a derivatives clearing organization), and rules to ensure the financial integrity of any futures commission merchants and introducing brokers and the protection of customer funds.

Illinois or Federal law." <u>Nutri-Pro, Inc. v. Phelps</u>, 172 Ill. App. 3d 505, 508, 526 N.E.2d 891, 892 (4th Dist. 1988). <u>See also</u> <u>Orthodontic Ctrs. of Ill., Inc. v. Michaels</u>, 403 F. Supp. 2d 690, 698 (N.D. Ill. 2005) ("Under Illinois law, 'when a statute declares that it shall be unlawful to perform an act and imposes a penalty for its violation, contracts for the performance of an act are void and incapable of enforcement.'") (quoting <u>Aste v. Metro. Life Ins. Co.</u>, 312 Ill. App. 3d 972, 980, 728 N.E.2d 629, 635 (1st Dist. 2000)). In addition, Illinois courts will not enforce contracts that violate regulations promulgated under federal law. <u>MacDonald v. Sturdy</u>, No. 88 C 7590, 1989 U.S. Dist. LEXIS 2069, at *6 (N.D. Ill. Feb. 27, 1989).

As ADMIS correctly points out, both of Collins's arguments "hinge upon the same single, uncontested, operative fact – that ADMIS allowed Collins to initiate the soybean spread when his account was the subject of an existing and unsatisfied margin call." Reply at 2. ADMIS also correctly notes that "Collins does not claim that ADMIS violated any state or federal statute or regulation in permitting Collins to establish the soybean spread." Id. at 4. Rather, Collins focuses exclusively on an alleged violation of CBOT margin rules by ADMIS.

It is apparent that Collins's illegality argument is nothing more than an attempt to reassert his margin rule counterclaim, which we previously found to be insufficient as a matter of law.

As we stated in our earlier opinion, "[i]t is well established that a sophisticated commodities futures investor cannot avoid liability for a debit balance on the ground that his broker failed to enforce exchange margin requirements." Collins I, 2006 WL 224095, at *3. Indeed, "the Commodity Futures Trading Commission has determined that, absent an allegation of fraud or bad faith, a futures commission merchant is free to adjust margin levels and to liquidate undermargined accounts when necessary." Weinberg Bros. & Co. v. Engel, No. 82 C 0876, 1983 U.S. Dist. LEXIS 13772, at *3 (N.D. Ill. Sept. 14, 1983). We have already determined that Collins cannot avoid liability by arguing that ADMIS failed to enforce the CBOT margin requirements, and Collins has provided no reason for us to reconsider this determination. His illegality argument therefore fails. See Starcon Int'l, Inc. v. Nat'l Labor Relations Bd., 450 F.3d 276, 278 (7th Cir. 2006) (doctrine of law of the case precludes reexamining a previous ruling (unless by a higher court) in the same case unless it was manifestly erroneous).

In support of his argument, Collins argues strenuously that this case is analogous to MacDonald v. Sturdy, No. 88 C 7590, 1989 U.S. Dist. LEXIS 2069 (N.D. Ill. Feb. 27, 1989). However, we explicitly rejected this contention in our earlier opinion. See Collins I, 2006 WL 224095, at *8 n.12. Undeterred, Collins attempts to reargue the applicability of this case, claiming that the Acts under which each case falls are similar, and that "[t]he

nature of the contracts in both cases and the violations committed (unauthorized members performing direct trading vs. undermargined trading), is [sic] similar in the reasons for their prohibition. Other than those differences, the cases are indistinguishable[.]" Resp. at 9.  However, as we pointed out previously, <u>MacDonald</u> differs from the present case in a fundamental way.

> In short, <u>MacDonald</u> involved parties who expressly contracted around a CBOE rule.  Not surprisingly, the court declined to enforce the contract.  In the instant case, on the other hand, the contract between ADMIS and Collins does not include any provisions that contravene the CBOT's margin rules.  For example, there is no provision under which ADMIS agrees not to require Collins to meet the CBOT's margin requirements.

<u>Collins I</u>, 2006 WL 224095, at *8 n.12.  This difference is fatal to Collins's argument.  Because the contract between ADMIS and Collins contains no provisions that contravene the CBOT's margin rules, <u>MacDonald</u> is inapposite and Collins's illegality argument fails.

Collins also asserts that "[i]t must be emphasized that plaintiff's violation of the CBOT Rules was not a mere minor, technical violation, but a systematic, willful and concerted string of violations."  However, Collins provides no evidence of fraud or bad faith on the part of ADMIS.  Instead he offers only an admission that ADMIS allowed Collins to establish positions in his futures account while his account was already the subject of existing maintenance margin calls on multiple prior occasions. Resp. To Rule 56.1 Statement, ¶ 58.  This by itself does not establish that ADMIS's conduct was in any way illegal.

In the alternative, Collins argues that the contract was against public policy. He argues at length that enforcement of illegal contracts is against public policy. However, since he has failed to establish that his contract with ADMIS was in any way illegal, this argument fails as well.

We find that Collins's arguments regarding the illegality of his contract with ADMIS are without merit, and we will not deny ADMIS's motion for partial summary judgment on this basis.


**B.** **Real Party in Interest**

Collins also argues that ADMIS is not the real party in interest. Collins notes that at least $75,000 of the alleged debt was paid by the broker, Shell Rock, Inc., and that ADMIS does not have an assignment from Shell Rock, nor has it given an assignment to Shell Rock.

Rule 17(a) of the Federal Rules of Civil Procedure provides as follows:

> **(a) Real Party in Interest.** Every action shall be prosecuted in the name of the real party in interest. An executor, administrator, guardian, bailee, trustee of an express trust, a party with whom or in whose name a contract has been made for the benefit of another, or a party authorized by statute may sue in that person's own name without joining the party for whose benefit the action is brought; and when a statute of the United States so provides, an action for the use or benefit of another shall be brought in the name of the United States. No action shall be dismissed on the ground that it is not prosecuted in the name of the real party in interest until a reasonable time has been allowed after objection for ratification of commencement of the action by, or joinder or substitution of, the real party in interest; and such

ratification, joinder, or substitution shall have the same
effect as if the action had been commenced in the name of the
real party in interest.

Collins contends that ADMIS has not shown that it falls into any of
the categories contemplated by Rule 17. He apparently contends
that Shell Rock is the real party in interest by virtue of its
payment of $75,000 of the alleged debt.

"The real party in interest is the one who 'by the substantive
law, possesses the right sought to be enforced, and not necessarily
the person who will ultimately benefit from the recovery.'"
Illinois v. Life of Mid-America Ins. Co., 805 F.2d 763, 764 (7th
Cir. 1986) (quoting C. Wright, Law of Federal Courts, § 70 (4th Ed.
1983)). Here, Collins does not dispute that he entered into the
Customer Agreement with ADMIS. He also provides no support for his
assertion that ADMIS is not the real party in interest in this case
other than the fact that Shell Rock has paid ADMIS $75,000.
Indeed, he does not dispute that Shell Rock has never requested nor
has ADMIS ever provided it with an assignment of ADMIS's claims and
rights under the Customer Agreement. Resp. To Rule 56.1 Statement,
¶ 56. As a result, this argument fails as well.

ADMIS is the real party in interest in this case. Because
Collins has failed to establish that his contract with ADMIS is
illegal, ADMIS's motion for partial summary judgment is granted.

## **CONCLUSION**

Plaintiff's motion for partial summary judgment is granted. Defendant is liable for his unpaid debit balance of $85,521.83. We will enter a judgment order upon presentation of a statement indicating the proper amount of prejudgment interest to be included.

Date:          September 6, 2006


ENTER:          _____

John F. Grady, United States District Judge